# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| TRACIE FLANNERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 4:13-cv-02091-JHE |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | | |

## MEMORANDUM OPINION[1]

Plaintiff Tracie Flannery ("Flannery") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). Flannery timely pursued and exhausted her administrative remedies. The case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is due to be **REVERSED** and **REMANDED** for further proceedings.

## I. Factual and Procedural History

Flannery was a forty-nine year old female at the time of the Administrative Law Judge ("ALJ") decision. (Tr. 29, 222). Flannery has limited education and previously worked as a cashier. (Tr. 28).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 15).

Flannery filed her application for a period of disability, DIB, and SSI on July 17, 2006, alleging an initial onset date of December 31, 2002.  (Tr. 217-26).  The Commissioner initially denied Flannery's application, and Flannery requested a hearing before an ALJ.  (Tr. 105).  On August 18, 2009, the ALJ found she was not disabled.  (Tr. 102-16).  Flannery filed subsequent claims for SSI and DIB on August 18, 2009 and September 1, 2009, respectively, and, on October 15, 2009, the state agency found Flannery disabled beginning August 14, 2009.  (Tr. 119).  Noting the discrepancy between these two decisions, the Appeals Council consolidated the cases and remanded them to an ALJ to consider additional evidence and to issue another decision.  (Tr. 117-21).  After the hearing, the ALJ denied Flannery's claim on June 11, 2012. (Tr. 29).   Flannery sought review by the Appeals Council, but, despite accepting her new evidence into the record, it declined her request for review on September 19, 2013. (Tr. 1-3).  On that date, the ALJ's decision became the final decision of the Commissioner.  On November 15, 2013, Flannery initiated this action.  (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI.   However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations for statutes or regulations found in quoted court decisions.

2

1233, 1239 (11th Cir. 1983).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance."  *Id.*

This Court must uphold factual findings supported by substantial evidence.  However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2013.

disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine, in sequence:

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)    whether the claimant can perform his or her past work; and
(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show such work exists in the national economy in significant numbers.  *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Flannery met the insured status requirements of the Social Security Act through March 31, 2011, (tr. 16), and that Flannery had not engaged in substantial gainful activity since December 31, 2002, the alleged onset date of her disability, (tr. 17).  At Step Two, the ALJ found Flannery has the following severe impairments:  depression, anxiety, substance abuse, obesity, diabetes mellitis, degenerative disk disease, hepatitis C with failed therapy, carpal tunnel syndrome, and migraine headaches.  (*Id.*).  At Step Three, the ALJ found

4

Flannery does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 19).

Before proceeding to Step Four, the ALJ determined Flannery's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments.  *See* 20 C.F.R. § 404.1545(a)(1).  The ALJ determined Flannery has the RFC "to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except she can comprehend and recall brief and uncomplicated directions, carry out short, simple instructions, attention and concentration is adequate for two hours [sic] periods throughout an eight-hour day."  (Tr. 22).  Furthermore, the ALJ found Flannery has "appropriate social interaction for causal [sic] and moderately limited contact with the public and co-workers," "can lift and carry 20 pounds occasionally and ten pounds frequently," "can stand or walk four hours total in an eight-hour day but no more than one hour at a time" "can sit four hours total in an eight-hour day but no more than one hour at a time," "can occasionally reach, push or pull, climb, balance, stoop, kneel, crouch or crawl," "can perform at unprotected heights or around moving machinery," and "can occasionally perform around environments of duct, gases, fumes and other pulmonary irritants and in environments of temperature extremes and vibrations."  (*Id.*).

At Step Four, the ALJ determined Flannery is able to perform her past relevant work. (Tr. 28).  At Step Five, the ALJ determined, based on Flannery's age, education, work experience, and residual functional capacity, there are also other jobs that exist in significant numbers in the national economy Flannery could perform.  (Tr. 29).  Therefore, the ALJ determined Flannery has not been under a disability and denied Flannery's claim.  (*Id.*).

## V. Analysis

Although the Court may only reverse a finding of the Commissioner if it is not supported

by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The Court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Flannery contends the ALJ erred by improperly applying the Eleventh Circuit pain standard, (doc. 13 at 3-7); improperly giving the consultative opinions of Dr. Storjohann and Estock "little weight" without substantial supporting evidence, (*id.* at 7-9); and failing to properly articulate good cause for according less weight to the opinion of Flannery's treating physician, (*id.* at 9-11).

**A. The ALJ's Adverse Credibility Finding Regarding Flannery's Subjective Pain Testimony is Supported by Explicit and Adequate Reasons, as well as Substantial Evidence**

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).   Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id.* Failure to articulate such reasons requires the testimony be accepted as true as a matter of law.

*Id.*

The ALJ found Flannery's medically determinable impairments could reasonably be expected to cause the alleged symptoms, satisfying the pain standard and establishing her testimony as sufficient to support a finding of disability. (Tr. 23). However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F.Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991), and substantial evidence, *see Foote*, 67 F.3d at 1561-62. The ALJ discussed Flannery's medical history in detail, (tr. 22-27), and determined "the substantial evidence does not confirm disabling pain or other limitations arising from [Flannery]'s alleged impairments," (tr. 27).

Flannery begins her argument by focusing on a single statement in the ALJ's decision, which states Flannery's "complaints are not corroborated by diagnostic imaging that consistently showed no greater than mild degenerative changes . . . but no evidence of acute fractures, misalignment, subluxation, or nerve root involvement." (Doc. 13 at 4) (citing tr. at 23). Despite having already acknowledged the ALJ's finding that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms," (*id.* at 4) (quoting tr. 23), Flannery goes on to describe all of the evidence that "could reasonably give rise to [Flannery]'s allegations of her disabling pain and limitations" and asserts that the ALJ's conclusion to the contrary was reversible error, (*id.* at 5). The ALJ's citations to the diagnostic tests that he states do not corroborate her pain level are part of an extensive discussion of the medical evidence, showing mild effects from her conditions and conservative treatment from her doctors, which the ALJ found contradicted her allegations of extreme pain. (Tr. 23-24). The ALJ articulates more

7

than sufficient reason to discredit Flannery's subjective complaints of pain.

Her next argument is that, "[a]lthough the ALJ acknowledged the Plaintiff's ongoing treatment for complaints of back pain, he failed to properly consider the longitudinal treatment record which supports the Plaintiff's testimony."  (Doc. 13 at 5).  She points to repeated trips to physicians at which she reported pain levels of 6 to 8 on a 10 point scale and for which she was prescribed various painkillers and anxiety medication.  (*Id.* at 6-7) (citing tr. 604-09, 611, 614-16, 619-25, 648-49, 651, and 653).  Flannery concedes the ALJ acknowledged her ongoing treatment, (*id.* at 5), but, citing to evidence Flannery ignores, the ALJ also found a history of successful conservative management accompanied by normal gait and decreased range of motion only in the spine, limiting her "to work activity consistent with the light level of exertion."  (Tr. 23-24).

Flannery also contends the ALJ mischaracterized the evidence when he found Flannery "has required only conservative management and has not been of such severity as to warrant referrals to specialists for further treatment."  (Doc. 13 at 7) (citing tr. 24).  Flannery points to a note in her treating physician's records indicating she "should probably see a surgeon."  (*Id.*) (citing tr. at 355).  The problem with using this to undermine the ALJ's decision is the ALJ cited to the report of the surgeon to which Flannery's doctor referred her.  (Tr. at 23) (citing tr. 631-32).  The surgeon's report noted Flannery reported only intermittent pain and her physical examination was essentially within normal limits, finding she had a normal gait and station, full motor strength of all muscle groups, and no evidence of neurological deficit.  (Tr. 631-32).  Moreover, the referral surgeon's plan explicitly recommended "conservative treatments," such as physical therapy and medication.  (Tr. 632).

In addition, the ALJ cited to Flannery's daily activities as evidence contrary to her

allegations of disabling pain, noting Flannery "reported that she cooked meals, shopped, performed household chores and personal care except for her hair, watched television, listened to music, read and talked on the telephone daily, drove short distances, visited with family and friends weekly, played cards and Scrabble with others on a regular basis, handled finances and provided care for multiple dogs on a daily basis."  (Tr. 22) (citing tr. 304-16).

The record contains such relevant evidence as a reasonable person would accept as adequate to support the ALJ's conclusion Flannery's testimony of severe, debilitating pain was not credible in light of the medical evidence.  As this constitutes substantial evidence and is based on application of the proper legal standards, the undersigned may not override that conclusion.

**B. The ALJ Did Not Err in Giving Less Weight to the Consultative Examination Reports of Drs. Storjohann and Estock**

Flannery first states Dr. Robert Storjohann, a licensed psychologist, performed a consultative exam on April 8, 2009, and his report showed "symptoms including a severely depressed mood, sleep disturbance, increased appetite, social withdrawal, isolation, irritability, low frustration tolerance, low energy, chronic fatigue and loss of interest."  (Doc. 13 at 7) (citing Tr. 769).  She further noted he found "marked to extreme limitations in areas that would preclude work."  (*Id.* at 8) (citing tr. 772-774).  She then notes Dr. Robert Estock's consultative examination, opining Flannery met listing 12.06 for Anxiety-Related Disorders, was consistent with Dr. Storjohann's report.  (*Id.*) (citing tr. 974, 984).  Flannery further points to various physician's notes from the record regarding anxiety, fatigue, and pain to support the doctors' findings. (*Id.*).

The Commissioner responded, asserting the ALJ properly granted reduced weight to the two consultative exam reports.  (Doc. 14 at 19-21).  First, the Commissioner explains the ALJ

properly gave Dr. Storjohann's opinion little weight because it was inconsistent with his own notes and the record generally.  (Doc. 14 at 19-20) (citing tr. 770-71).  Next, the Commissioner points out Dr. Estock's report was given little weight because it appears not only to be based solely on Dr. Storjohann's opinion and not consider the opinions of any of the other physicians but it also directly conflicts with Dr. Mary Arnold's subsequent opinion finding only moderate limitations in any area.  (*Id.* at 20-21) (citing tr. 974-86).

Under 20 C.F.R. § 404.1527(c)(2), a treating physician's opinion is given controlling weight where it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Accordingly, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  However, there is no such requirement for nontreating physicians. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) ("[T]heir opinions are not entitled to deference because as one-time examiners they were not treating physicians."); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) ("[T]his requirement [to state good cause for giving less weight] only applies to treating sources.  With regard to nontreating, but examining, sources, the agency will simply '[g]enerally [ ] give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined' him." (quoting 20 C.F.R. § 404.1527(d)(1)).  *Cf.* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your *treating* source's opinion." (emphasis added)).  Flannery does not contend Dr. Storjohann or Dr. Estock are treating physicians; therefore, they receive no special deference.  Similarly, an opinion from a physician of any type on an issue reserved to the Commissioner is not considered a "medical

opinion" at all and does not receive any special significance.  20 C.F.R. § 404.1527(d).

Dr. Storjohann's consultative report was not improperly discounted as that determination was based on substantial evidence and the proper application of the legal principles.  As a non-treating physician, his opinion was entitled to no special weight or explanation requirement, but the ALJ addressed his findings and found his opinion worthy of less weight because his opinion was not consistent with the record as a whole or even his own examination.  (Tr. 26).  The ALJ noted that, although Dr. Storjohann assessed Flannery as having marked to severe mental functional limitations, his own examination notes revealed intact memory; no hallucinations or delusions; and logical, coherent, goal-directed thoughts and speech with no evidence of confusion, loose associations, or psychosis.  (Tr. 26) (citing tr. 767-774).  The ALJ's decision to give less weight to Dr. Storjohann's opinion is supported by substantial evidence and was not improper.

As with Dr. Storjohann's above, Dr. Estock's consultative report was not improperly discounted as that determination was based on substantial evidence and the proper application of the legal principles.  Like Dr. Storjohann, Dr. Estock's opinion as a non-treating physician was entitled to no special weight or explanation requirement.  In addition, there is evidence from other consultative medical sources entitled to the same deference as Drs. Storjohann and Estock's opinions to which the ALJ explicitly gave greater weight and which support the ALJ's RFC.  (*See* tr. 27, 687-90 (Dr. Arnold's October 2006 report); 1019-25 (Dr. Arnold's August 2011 report); 1027-38 (Dr. Iyer's report)).  The ALJ's decision to give less weight to Dr. Storjohann and Estock's opinions is supported by substantial evidence and was not improper.

**C.** **The ALJ Did Not Improperly Fail to Weigh Treating Physician Testimony That Was Not In Evidence, but the Appeals Council Erred When It Denied Review Despite That Newly Submitted Evidence**

Flannery contends the ALJ's decision is not supported by substantial evidence because the ALJ did not articulate good cause for according less weight to the opinion of Flannery's treating physician, Dr. Michael Belyeu. (Doc. 13 at 9). Under 20 C.F.R. § 404.1527(c)(2), a treating physician's opinion is given controlling weight where it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Accordingly, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440. Good cause to reduce the weight given to a treating physician's opinion exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).

The Commissioner contends, and Flannery concedes, the opinion at issue was never admitted into evidence before the ALJ as it was not submitted until June 11, 2012, the same day the ALJ's decision was issued. (Doc. 13 at 9, doc. 14 at 21; tr. 1039-40; tr. 14-29). The Appeals Council, however, admitted the letter into evidence as Exhibit 53. (Tr. 2, 5, 1039-40). This makes it part of the record on appeal, but, "when the AC has denied review, [the court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1322-23 (11th Cir. 1998). As Dr. Belyeu's letter was only presented to the Appeals Council, the ALJ "cannot be faulted for having failed to weigh evidence never presented to him." *Falge*, 150 F.3d at 1323 (quoting *Eads*

*v. Secretary of Dep't of Health and Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993)).

Citing *Falge* and *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064 (11th Cir. 1994), the Commissioner argues Dr. Belyeu's letter must be treated as new evidence before the district court and can only be remanded under Sentence Six of 42 U.S.C. § 405(g), (doc. 14 at 22); however, subsequent Eleventh Circuit authority has clarified those two cases, *see Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1264-66 (11th Cir. 2007).  In *Ingram*, the Eleventh Circuit noted the Appeals Council's decisions to refuse evidence or consider evidence then deny review are final decisions of the Commissioner subject to judicial review.  *Id.* at 1265-66.  The court stated, "[b]ased on the plain meaning of the text of section 405(g) and the lucid explication in our longstanding precedents about the scope of judicial review, we conclude that a federal district court must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits."  *Id.* at 1258.  *See also Dunn v. Astrue*, 660 F. Supp. 2d 1290, 1294 (N.D. Ala. 2009) (reversing Appeals Council's decision not to review or remand on the new evidence submitted).[4]   As a result, district courts review the Appeals Council's decision under Sentence Four of 42 U.S.C. § 405(g) and determine whether, in light of the new evidence, the ALJ's decision remains supported by substantial evidence or the Appeals Council should have remanded it.  *See Ingram*, 496 F.3d at 1266.

Dr. Michael Belyeu's letter constitutes opinion evidence from a treating physician, which is given controlling weight when it is "supported by medically acceptable clinical and laboratory

---

[4] Although the Eleventh Circuit observed that, where the party appealed only the ALJ's decision and not the Appeals Council's decision, the latter issue would not be before it, *id.* (citing  *Falge*, 150 F.3d at 1324), it also held it was reversible error for the district court not to consider whether the Appeals Council correctly decided the ALJ's findings or conclusions are not contrary to the weight of the evidence currently in the record, *id.* at 1266-67.

diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. § 404.1527(c)(2).  In the letter, Dr. Belyeu lists Flannery's conditions and the various medications she takes for them, then states that, "[d]ue to the multiplicity of her symptoms it is likely that she will at times miss more than 3 days from work per month and I do not foresee this condition changing over the next 12 months or even longer."  (Tr. 1040).  He concludes she is "unable to work or maintain gainful employment at this time."  (*Id.*).

Although the letter's ultimate conclusion is an issue for the Commissioner and therefore not controlling, Dr. Belyeu's opinion regarding the numbers of days Flannery would miss per month is not a conclusory statement about her potential disability but a valid medical opinion regarding the nature and severity of her conditions.  *See Titles II & XVI: Med. Source Opinions on Issues Reserved to the Comm'r*, SSR 96-5P, 1996 WL 374183, at *2 (S.S.A. July 2, 1996).[5] The Vocational Expert testified that, if "three or more [missed work days per month] would be chronic or consistent[,] that would be preclusive of work activity."  (Tr. 59).  Therefore, if Dr. Belyeu's opinion is supported by the evidence and given controlling weight, the Vocational Expert's opinion indicates Flannery would be unable to perform any of the jobs available to her. Because a treating physician's opinion is given controlling weight unless the ALJ "clearly articulate[s] the reasons for giving less weight to [that] opinion," *Lewis*, 125 F.3d at 1440, this case should be remanded to the Commissioner to consider the additional evidence in the context of the entire record, determine what weight it should be given, and articulate the reasons for that

---

[5] The Commissioner contends Dr. Belyeu's opinion regarding the number of days Flannery would miss per month "is nothing more than an opinion on an issue reserved to the Commissioner, which is entitled to no special significance," (doc. 14 at 24), but does not explain how Dr. Belyeu's opinion falls into that class of dispositive administrative findings reserved to the Commissioner.  Dr. Belyeu's opinion on this matter does not state a conclusion that the facts are sufficient to meet a statutory or regulatory standard but merely states another opinion on a fact that, in conjunction with the additional opinion of the Vocational Expert, bears on the Commissioner's administrative finding of disability.

decision.

## VI. Conclusion

Because new evidence brings into question whether the ALJ's decision is still supported by substantial evidence, the Commissioner's decision is **REVERSED** and this action **REMANDED** for further proceedings.

DONE this 14th day of January 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE